REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND
No. 977
September Term, 2013

_____

ROSS CONTRACTING, INC.

v.

FREDERICK COUNTY, MARYLAND

_____

Berger,
Nazarian,
Reed,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: February 25, 2015

This appeal arises from a construction contract between the Board of County Commissioners of Frederick County (the "County") and Ross Contracting, Inc. ("Ross"), for the replacement of the Bidle Road Bridge. Among other things, the Contract required Ross to remove the bridge's existing supporting abutments and excavate for new supports. In the course of excavating one of the abutments, Ross encountered subsurface conditions that differed from those it expected, so it filed a request for an equitable adjustment in the contract price to reflect the differences. The County denied Ross's request. An arbitrator appointed pursuant to the Contract[1] affirmed that denial in part, reversed it in part, and awarded Ross a smaller equitable adjustment than it had requested. The Circuit Court for Frederick County upheld the arbitration decision, finding substantial evidence in the record to support the arbitrator's decision that Ross did not encounter a materially different site condition. Ross seeks our review, but we dismiss because Ross had no right of appeal to this court.

## I. BACKGROUND

### A. The Contract And Its Performance

In October 2008, the County issued an Invitation to Bid (the "Invitation") for a contract to construct the "Replacement of Bidle Road Bridge No. F03-10 over Catoctin Creek." The Invitation called for the removal of the existing one-lane bridge structure and supporting abutments, excavation for new supports, and construction of a new two-lane bridge structure and roadway (the "Project"). Prospective bidders were also provided,

---

[1] The parties adopted Md. Code (1957, 2011 Repl. Vol.), §1A of Article 25 (the predecessor of current Md. Code (1974, 2013 Repl. Vol.), § 5-5A-02(e) of the Courts & Judicial Proceedings Article) to govern the resolution of disputes arising from the contract.

among other things, with the Maryland State Highway Administration's Standard Specifications for Construction and Materials (the "Specifications") and four soil boring logs[2] of the excavation area, designated B-1 through B-4, that indicated to bidders the types of subsurface materials at the excavation site.[3] Soil boring logs B-1 and B-2 were from the area where Abutment A was to be constructed, and B-3 and B-4 were from the area where Abutment B was to be constructed. The soil boring logs for Abutment B indicated that the winning contractor should anticipate disintegrated rock down to a depth of 360 feet above sea level ("ASL") at B-3 and 366.40 feet ASL at B-4. As such, the contract provided that the contractor would excavate to a depth of 382 feet ASL, where it would place the bottom of the footer for Abutment B.

Ross, a construction company based in Mount Airy, reviewed the Invitation and, as part of the bid process, examined the Project site on four separate occasions. Ross was the successful low bidder and entered into a contract with the County on February 3, 2009 (the "Contract"). The Contract incorporated, among other things, the Invitation, the Specifications, and the soil boring logs. The Specifications included specific provisions covering situations where site conditions during performance varied from the conditions set forth in the Contract:

[2] A "soil boring" of soil strata is performed "to establish its compressibility, strength, and other characteristics likely to influence a construction project, and prepare a subsurface profile and soil report." BusinessDictionary.com, *Geotechnical Investigation*, http://www.businessdictionary.com/definition/geotechnical-investigation.html (last visited June 12, 2014).

[3] The boring logs were provided under a separate contract by a geotechnical/engineering firm, Hillis-Carnes Engineering Associates, Inc.

2

**GP-4.05 Differing Site Conditions**

(a) The Contractor shall promptly, and before such conditions are disturbed, notify the procurement officer in writing of:

(1) Subsurface or latent physical conditions at the site differing materially from those indicated in this Contract; or

(2) Unknown physical conditions at the site of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this contract.

The procurement officer shall promptly investigate the conditions, and if he finds that such conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of any part of the work under this Contract, whether or not changed as a result of such conditions, an equitable adjustment shall be made and the Contract modified in writing accordingly.

(b) No claim of the Contractor under this clause shall be allowed unless the Contractor has given the notice required in (a) above; provided however, the time prescribed therefore may be extended by the State.

**GP-4.06 Changes**

(d) . . . [I]f any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this Contract, whether or not changed by any order, an equitable adjustment shall be made and the Contract modified in writing accordingly. Provided, however, that except for claims based on defective specifications, no claim for any change under [4.06](b) above shall be allowed for any costs incurred more than 20 days before the Contractor gives written notice as therein required; and provided further, that in the case of defective Specifications for which the [County] is responsible, the equitable adjustment shall include any increased cost reasonably incurred by the Contractor in attempting to comply with such defective Specifications.

(e) If the Contractor intends to assert a claim for an equitable adjustment under this clause, he shall, within 30 days after receipt of a written change order under [4.06](a) above or the furnishing of written notice under [4.06](b) above, submit to the procurement officer a written statement setting forth the general nature and monetary extent of such claim, unless this period is extended by the State[.]

Overall, and before any adjustments, the County agreed to pay Ross in "an amount not to exceed the contract bid price of [$1,293,797.50]."

Ross first completed demolition and excavation work on Abutment A, then began excavation activities for Abutment B on April 22, 2009. Excavation continued until April 29, when Ross encountered hard rock material above the elevations indicated on the boring logs provided by the County. The following day, Ross notified the County of what it believed to be a differing site condition, as described in GP-4.05. The County suspended excavation activities on May 1.

4

The County directed Ross to engage a third-party quality control/inspector subcontractor, ECS, Ltd. ("ECS"), to perform three additional borings in the area of Abutment B. ECS conducted the boring operations on May 11 and 12, 2009, and on May 18, it gave Ross a report of its findings (the "ECS Report"). The ECS Report indicated that hard rock materials existed at a depth of 389 feet ASL and that these materials differed from the conditions represented on the boring logs provided by the County.

The County reviewed the ECS Report and, on May 26, 2009, informed Ross that it would issue a revised design of Abutment B. Two days later, Ross notified the County that it anticipated filing a claim for an equitable adjustment due to the differing site conditions and changed design. On June 2, the County issued a "red-lined version of the Project designed for Abutment B," which "raised" the bottom of the Abutment B footer by three feet—from 382 feet ASL to 385 feet ASL. The County noted that the newfound hard rock material made it unnecessary to excavate the additional three feet as originally planned because those depths would ultimately have been filled with concrete.

Ross completed construction of the revised design on June 24, 2009 and, pursuant to GP-4.06(e), submitted a Proposed Change Order (the "PCO") requesting an equitable adjustment of the Contract price in the amount of $89,971.55. Ross sought additional compensation for the added costs and time necessitated by the revised design, as well as the cost of ECS's geotechnical exploration per the County's direction.

In a letter dated July 27, 2009, the County rejected Ross's PCO, stating that Ross was "only due a reasonable amount for the Geotechnical Services provided by ECS . . .

5

and that the credit due as a result of the raising of the bottom footing elevation . . . may offset the additional inconvenience caused by the time it took to excavate the harder rock." On November 17, 2009, Ross submitted a revised claim for $124,902.64, which the County also denied. In response, Ross invoked the Contract's Arbitration provision:

> Pursuant to [Art. 25 § 1A(g)], in the event of a dispute between the parties to this contract involving $10,000.00 or more regarding the terms of the contract or performance under the contract, the question involved in the dispute shall be subject to a determination of questions of fact by one of the following County Directors: Director of Public Works, Director of Utilities and Solid Waste Management, Finance Director or Director of Management Services. The County Manager, in his sole discretion, shall select one of these Directors to make this determination. The decision of the Director or other official is subject to review on the record by the Circuit Court for Frederick County.

On February 2, 2012, pursuant to this provision, the County appointed Kevin Demosky, the Director of the Frederick County Division of Utilities and Solid Waste Management, to serve as the hearing officer in this dispute (the "Hearing Officer").

## B.     The Hearing Officer's Review

The Hearing Officer heard opening arguments and visited the Project Site on February 10, 2012, held evidentiary hearings on March 2 and 13, and accepted written briefs on April 5. On May 1, he issued a written decision granting in part and denying in part Ross's claim for an equitable adjustment of the Contract price. The summary of the Hearing Officer's findings, as provided by the circuit court, is helpful here:

> *The Agency*[4] *concluded, in its Final Decision, that the rock encountered by Ross during the excavation did not*

---

4 The circuit court referred to the Hearing Officer as the "Agency" throughout its opinion.

*amount to a materially different site condition pursuant to GP-4.05 of the Contract.* The Agency reasoned that Ross should have been on notice prior to the excavation that it would encounter rock at the site of the excavation, but did not conduct a proper site inspection prior to its bid. The Agency explained that it found GP-2.04 of the Contract relevant, which waives liability of the State for the Contractor's interpretations of information in the Contract.

*The Agency decided that Ross was on notice of the rock, which was visible at the site of the project.* The Agency explained that the testimony demonstrated that Ross'[s] agents made at least four pre-bid site inspections, and that "[t]he possibility of hard rock was clearly visible during a pre-bid site inspection." The Agency recognized that the soil borings provided as part of the contract did constitute a softer soil than Ross eventually encountered, but explained that "pre-construction photos in evidence suggest a sharply plunging rock stratum that would have been apparent to Ross, but which could have easily been not encountered [by the company that performed the pre-bid soil boring]."

*The Agency also explained that Ross was on notice that other contractors were anticipating encountering rock during the project.* Specifically, the Agency referenced what has been designated as Question 19 for pre-bid hearing where the County fielded questions from bidding contractors about the project; the Transcript of this hearing is attached to the Contract as Addendum 1. The Agency explained, "Addendum 1 clearly indicates that other bidders were aware they would encounter rock in excavating Class 3 excavation work on the site. Addendum 1 also put all bidders, like Ross that did not attend the pre-bid meeting, on notice that they would likely encounter rock." The Agency explained further, ". . . there is no way that I can disregard the notice of potential rock provided by Addendum 1 that is part of the Contract nor can I disregard the obvious and visible rock ledge that should have been addressed during a pre-bid site inspection." The Agency explained that Ross'[s] lack of addressing the "obvious and visible rock ledge" resulted in its eventual low bid price:

7

"Further, I find the Class 3 excavation bid comparison introduced by the County to be relevant to the issue of what a reasonable contractor bidding this Bridge project should have expected. The comparison of Class 3 excavation reflects that while Ross bid $16.00 per cubic yard ("CY") for Class 3 excavation, the second and third lowest overall bidders bid 67.00 and 35.00 per CY respectively for Class 3 excavation (4.2 times and 2.2 times Ross'[s] bid respectively)."

The Agency reasoned that "it would be inequitable to allow Ross—which should have expected to encounter hard rock—to low bid the Class 3 excavation as Ross did . . . only to receive additional compensation through a differing site condition claim." The Agency concluded that Ross misread the information at the site and in the contract, and that the State should and could not be liable for Ross'[s] error pursuant to GP-2.04 of the Contract.

(Emphases added.) In granting part of Ross's equitable adjustment claim, the Hearing Officer found that Ross was entitled to additional compensation in the amount of $31,946.41 for the pause in the project to investigate the subsurface conditions. But the Hearing Officer denied Ross any additional compensation for the excavation of the hard rock material.

### C. The Circuit Court's Review

On May 16, 2012, Ross filed a "Petition for Judicial Review of Agency Decision" in the Circuit Court for Frederick County.[5] The circuit court heard arguments on April 15, 2013 and entered an Opinion and Order on June 5, 2013. The court concluded that although "soil boring logs B-3 and B-4 . . . demonstrate a soft subsurface material," it agreed with the Hearing Officer's finding "that evidence in the record supports the conclusion that Ross was aware of the possible existence of subsurface rock at the site of Abutment B." Consequently, the court affirmed the Hearing Officer's decision that Ross did not encounter a materially different site condition. Ross filed a notice of appeal on June 26, 2013.

## II. DISCUSSION

---

[5] Despite the caption of its own Petition, Ross now disputes that the Hearing Officer's decision was an administrative agency action, arguing that the narrower definition of "administrative agency" provided by the Administrative Procedure Act, Md. Code (1984, 2009 Repl. Vol.), § 10-202(b) of the State Government Article ("SG"), should trump the definition provided by Maryland Rule 7-201. The Act, however, applies only to *State* government entities. *See* SG § 10-203(a); *see also* 5 Admin. L. & Prac. Appendix XV (3d ed.) (the definition of "agency" in the Administrative Procedure Act "applies only to state actors, not local agencies").

Maryland Rule 7-201, the authority for Ross's petition for judicial review, "governs actions for judicial review of . . . an order or action *of an administrative agency*, where judicial review is authorized by statute." Md. Rule 7-201(a). The coverage of this Rule spans broadly, defining "administrative agency" as "any agency, board, department, district, commission, authority, commissioner, official, the Maryland Tax Court, or other unit of the State or of a political subdivision of the State." Md. Rule 7-201(b). The Hearing Officer, "an officer . . . of a county" whose decision is subject to judicial review pursuant to Art. 25 §1A(g), falls within the broad definition of "administrative agency" contained in Rule 7-201(b).

Ross raises one question for our review: did the Hearing Officer err in finding that Ross was not entitled to the full amount of its equitable adjustment claim? The County moved to dismiss, arguing that this Court lacked jurisdiction to hear Ross's appeal. As we explain, the County is correct—Ross had no right of appeal from the circuit court judgment.

## A. Ross's Appeal To This Court Requires Statutory Authorization.

"'It is an often stated principle of Maryland law that appellate jurisdiction, except as constitutionally authorized, is determined entirely by statute, and that, therefore, a right of appeal must be legislatively granted.'" *Prince George's Cnty. v. Beretta U.S.A. Corp.*, 358 Md. 166, 173 (2000) (quoting *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 485 (1997)); *see also Madison Park N. Apartments, Ltd. P'ship v. Comm'r of Hous. & Cmty. Dev.*, 211 Md. App. 676, 690, *dismissed*, 439 Md. 327 (2014). As a result, Ross's ability to appeal to this Court depends on whether that right exists under the Maryland Code. *See Beretta*, 358 Md. at 173-74; *Gisriel*, 345 Md. at 485; *Madison Park*, 211 Md. App. at 690. If no statutory authorization exists, "this Court does not have jurisdiction," and "we must dismiss the case *sua sponte*." *Madison Park*, 211 Md. App. at 690 (citing *Miller & Smith v. Casey PMN*, 412 Md. 230, 240 (2010); *Beretta*, 358 Md. at 174).

In general, Md. Code (1974, 2013 Repl. Vol.), § 12-301 of the Courts & Judicial Proceedings Article ("CJ"), permits this Court to hear appeals from final judgments of the circuit courts in the exercise of original, special, limited, or statutory jurisdiction:

10

> *Except as provided in [CJ] § 12-302 of this subtitle*, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

CJ § 12-301 (emphasis added). However, a right to appeal under CJ § 12-301 does not exist if CJ § 12-302(a) applies instead. CJ § 12-302(a) applies to "an appeal from a final judgment of a court made *in the exercise of appellate jurisdiction in reviewing the decision of . . . an administrative agency*." CJ § 12-302(a) (emphasis added); *see also Beretta*, 358 Md. at 175; *Gisriel*, 345 Md. at 486; *Madison Park*, 211 Md. App. at 690. A circuit court exercises "appellate jurisdiction" when it reviews an administrative agency's decision pursuant to statutory authorization. *Gisriel*, 345 Md. at 492; *see also Rogers v. Eastport Yachting Ctr., LLC*, 408 Md. 722, 733-34 (2009); *Dvorak v. Anne Arundel Cnty. Ethics Comm'n*, 400 Md. 446, 452-53 (2007). And when a circuit court reviews a decision of an administrative agency pursuant to CJ § 12-302(a), any right of appeal to this Court must arise under a statute *other than CJ § 12-301*; if no other statutory right to an appeal exists, we must dismiss the appeal. *Madison Park*, 211 Md. App. at 690.

In *Gisriel*, 345 Md. 477, the Court of Appeals examined an appellate path closely mirroring the path taken here: an appeal to this Court from a circuit court's review of an administrative agency's decision. In that case, Mr. Gisriel filed a petition with the Ocean City Board of Supervisors to bring a zoning ordinance to referendum, and the Board rejected his petition. *Id.* at 480-81. Mr. Gisriel sought review of the Board's decision before the City Council of Ocean City, and the City Council affirmed. *Id.* at 482.

11

Pursuant to the Ocean City Charter,[6] Mr. Gisriel appealed to the Circuit Court for Worcester County, which ruled in his favor, and the City Council appealed to this Court. *Id.* at 484. We decided that we had jurisdiction to hear the City Council's appeal and reversed the circuit court's decision. *Id.* at 484-85. The Court of Appeals upheld our reversal, but found that our basis for finding jurisdiction was incorrect (the Court ultimately found jurisdiction on another ground). *Id.* at 496, 508. Specifically, the Court held that we erroneously concluded that CJ § 12-302(a) was inapplicable:

> The Court of Special Appeals, construing this language in its most literal sense, held that [CJ] § 12-302(a) is applicable only when the court below is exercising "appellate" jurisdiction rather than "original" jurisdiction. The Court of Special Appeals thus explained (102 Md. App. at 147):
>
>> "The issue, therefore, is whether the circuit court, in the case *sub judice*, exercised original or appellate jurisdiction when it reviewed the City Council's decision to affirm the Board's denial of appellee's petition."
>
> Next, the Court of Special Appeals, citing and quoting from *Shell Oil Co. v. Supervisor*, 276 Md. 36, 43 (1975), reiterated the principle of Maryland constitutional law that circuit court review of decisions by administrative agencies or local government bodies constitutes an exercise of original jurisdiction and not appellate jurisdiction. 102 Md. App. at

---

[6] In addition to authorizing Mr. Gisriel's appeal to the circuit court, section C-505 of the Ocean City Charter also authorized his initial appeal to the City Council:

> "If any person shall feel aggrieved by the action of the board of supervisors of elections . . . such person may appeal to the Council. Any decision or action of the Council upon such appeal may be appealed to the Circuit Court for the county within thirty (30) days of the decision or action of the Council.

*Gisriel*, 345 Md. at 484 n.8.

147-49.  Since, under the Court of Special Appeals'[s] interpretation, [CJ] § 12-302(a)'s limitation on the right to appeal from circuit court judgments is applicable only when a circuit court is technically exercising *appellate* jurisdiction, and since the circuit court's review of the City Council's decision in the present case was an exercise of *original* jurisdiction, [CJ] § 12-302(a)'s limitation on the right to appeal was held to be inapplicable in the present case.  For this reason, the Court of Special Appeals held that it had jurisdiction under [CJ] §12-301 to entertain the appeal.

*Gisriel*, 345 Md. at 490-91.  The Court rejected this interpretation of CJ § 12-302(a), *id.* at 491, and called for a "broader construction of the phrase 'appellate jurisdiction' in [CJ] § 12-302(a), that included ordinary *statutory judicial review of adjudicatory decisions by administrative agencies* and local legislative bodies" within the meaning of that phrase. *Id.* at 492 (emphasis added).  Put another way, the Court stated that CJ § 12-302(a) "is applicable to *statutory judicial review actions* even though such actions technically do not represent exercises of a circuit court's appellate jurisdiction."  *Id.* at 493 (emphasis added).  In turn, the Court held that circuit court review of an agency ruling ordinarily precludes review in this Court:

[W]hen a circuit court proceeding in substance constitutes ordinary judicial review of an adjudicatory decision by an administrative agency . . . pursuant to a statute, ordinance, or charter provision, and the circuit court renders a final judgment within its jurisdiction, [CJ] § 12-302(a) is applicable, and an appeal to the Court of Special Appeals is not authorized by [CJ] § 12-301.

*Id.* at 496 (citations omitted).

Because the Ocean City Charter authorized the circuit court's review of the City Council's decision, the Court found that the circuit court was exercising "appellate

13

jurisdiction" under CJ § 12-302(a). Consequently, the Court required additional statutory authority permitting a subsequent appeal to this Court. Finding none, the Court held that we lacked jurisdiction to hear the appeal. *Id.* at 485-86.[7]

The appellate path taken in *Beretta*, 358 Md. 166, also mirrors both this case and *Gisriel*. In *Beretta*, an employer aggrieved by a decision of the Prince George's County Human Relations Commission brought an action for judicial review in the Circuit Court for Prince George's County. *Id.* at 170. Beretta's appeal to the circuit court was permitted by a provision in the Prince George's County Code, which provided that "[a]ny party aggrieved by a final decision by the Commission is entitled to file an appeal pursuant to Subtitle B of the Maryland Rules of Procedure." *Id.* at 169. Subtitle B (which was replaced by Rule 7-201 through 7-209) permitted the review of Commission decisions in the circuit court. *Id.* at 169. The circuit court affirmed, the employer appealed to this Court, and we reversed. *Id.* at 171. However, the Court of Appeals found that CJ § 12-302(a) applied to the circuit court's review of the Commission's

---

[7] In *Gisriel*, the Court also drew a distinction between this Court's review of decisions of state and local administrative bodies:

> [A]ppeals to the Court of Special Appeals from judgments of the circuit courts reviewing decisions of most *state* administrative agencies are generally authorized by the Maryland Administrative Procedure Act[. SG § 10-223(b)]. Consequently, the viability of the [CJ § 12-302(a)] nonappealability principle . . . is today largely limited to circuit court judgments in cases involving statutory judicial review of adjudicatory or quasi-judicial decisions by *local* government administrative agencies and legislative bodies.

*Gisriel*, 345 Md. at 489-90 (footnote omitted) (emphasis in original).

decision, so it looked to see if a right to a subsequent appeal was granted elsewhere in the law. *Id.* Finding no such authorization, the Court held that we lacked jurisdiction to hear the employer's appeal of the judgment. *Id.* at 174.[8]

---

[8] *Madison Park*, 211 Md. App. 676, is also helpful. In that case, we examined whether the *circuit court* was statutorily authorized to review a decision of the Commissioner of the Baltimore City Department of Housing and Community Development. *Id.* at 680. As here, we reviewed the principles governing appellate review of administrative agency decisions (primarily CJ §§ 12-301 and -302), and we recognized that statutory authorization was necessary to establish *any* judicial review power. In turn, we looked to see whether such authorization could be found in either the Baltimore City Code or the Administrative Procedure Act. SG § 10-101 *et seq.* Finding no statute authorizing *any* review of the Commissioner's decision within either source, *Madison Park*, 211 Md. App. at 692, we held that a party aggrieved by the Commissioner's decision had no right to seek judicial review. Moreover, in *dicta*, we recognized that even "if the [Baltimore City Code] provide[d] for an appeal of the Commissioner's decision to the circuit court, [the Court of Special Appeals] is without jurisdiction to entertain further review, *unless authorization is found elsewhere.*" *Id.* at 691 (emphasis added). The Court of Appeals granted Madison Park's petition for *certiorari*, but the appeal was dismissed after argument and before a decision. 439 Md. 327.

**B.** **No Statutory Authority Permits This Court To Hear Ross's Appeal.**

Our jurisdiction to hear Ross's appeal depends on two things: *first*, whether CJ § 12-302(a) applies to Ross's appeal, and, if so, *second*, whether any statutory authority, other than CJ § 12-301, authorizes us to hear Ross's appeal from the circuit court's affirmance of the Hearing Officer's decision.

Here, the circuit court reviewed and affirmed the Hearing Officer's decision pursuant to a statutory right of review provided by Art. 25 § 1A(g):

> (g) *Resolution of dispute in construction contract—Determination by county officer subject to court review.*—Notwithstanding the provisions of subsections (e) and (f) of this section, a county governed by county commissioners may provide or require, with regard to a construction contract to which it is a party, that a dispute between the parties involving $10,000 or more regarding the terms of the contract or performance under the contract, be subject to a determination of questions of fact by an officer or official body of a county governed by county commissioners, *provided that the decision of the officer or official body of a county governed by county commissioners is subject to review on the record by a court of competent jurisdiction*.

Art. 25 § 1A(g) (emphasis added). As such, CJ § 12-302(a) applies and CJ § 12-301 cannot support jurisdiction in this Court.

We turn then to the second question: whether any statutory authority, other than CJ § 12-301, supplies this Court with such jurisdiction. Ross argues that statutory authorization can be found in the Administrative Procedure Act (the "APA"), SG § 10-101 *et seq*. Although Ross conceded at oral argument that its dispute with the County

isn't covered directly by the APA,[9] it contends that the parties invoked the APA by adopting GP-5.15 into the Contract. Subsection (a) of GP-5.15 provides that the "Contract is subject to the provisions of Title 15, Subtitle 2, State Finance and Procurement Article (Dispute Resolution) of the Annotated Code of Maryland," which in turn permits "judicial review in accordance with Title 10, Subtitle 2 of the State Government Article[—the APA]." Md. Code (1985, 2009 Repl. Vol.), § 15-223 of the State Finance and Procurement Article ("SFP"). In other words, Ross argues that if GP-5.15(a) applies here, disputes arising from the Contract should be adjudicated in accordance with the APA. Looking to the APA, Ross relies on SG § 10-223(b)(1), which provides that "[a] party who is aggrieved by a final judgment of a circuit court under this subtitle may appeal to the Court of Special Appeals in the manner that law provides for appeal of civil cases." *Id.* From this provision, Ross concludes that this Court is statutorily authorized to hear its appeal.

We disagree. Ross overlooks subsection (b) of GP-5.15, which provides that "*[e]xcept as otherwise may be provided by law*, all disputes arising under . . . this Contract that are not disposed of by mutual agreement shall be resolved in accordance with this clause." GP-5.15(b) (emphasis added). Unfortunately for Ross, how we treat

---

[9] The APA applies to State administrative agencies, not local agencies. *See Rogers v. Eastport Yachting Center, LLC*, 408 Md. 722, 732-33 (2009) (finding that the Board of Port Wardens of Annapolis was not an "agency," as contemplated by the APA); *Madison Park*, 211 Md. App. at 691-92 (finding the same for the Baltimore City Department of Housing and Community Development and the Commissioner thereof); *see also* SG § 10-202(d) (the APA defines an "agency" as "an officer or unit of the State government authorized by law to adjudicate contested cases[,] or . . . a unit that (i) is created by general law[,] (ii) operates in a least 2 counties[,] and (iii) is authorized by law to adjudicate contested cases").

disputes arising from a construction contract between a county and a contractor *is* "otherwise . . . provided by law." Art. 25 § 1A(g) provides the dispute resolution procedures that Ross and the County were required to follow in connection with the Contract.[10] Under GP-5.15(b), their dispute was not subject to GP-5.15(a) or, in turn, the APA, which leaves no statutory basis for appellate jurisdiction in this court.

> **APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANT.**

---

[10] Ross likely also has waived any argument that its dispute with the County is subject to the dispute resolution procedures contained in the State Government or State Finance and Procurement Articles. Ross has repeatedly invoked Art. 25 § 1A(g) (pursuant to the Contract's Arbitration provision) throughout the dispute resolution process leading to this appeal, so it cannot now claim that this dispute should have been subject to the APA (by way of GP-5.15(a)).

Examples of Ross's reliance on Art. 25 § 1A appear throughout the record. *First*, Ross did not challenge the Hearing Officer's adjudication of the parties' equitable adjustment dispute, and after the Hearing Officer heard arguments, Ross submitted a Closing Memorandum explaining that it had brought its equitable adjustment claim pursuant to Art. 25 § 1A. If GP-5.15(a) had applied, the initial dispute would have been subject to the jurisdiction of the Maryland State Board of Contract Appeals. *See* SFP § 15-211(a)(2)(iii) ("The Appeals Board shall have jurisdiction to hear and decide all appeals arising from the final action of a unit . . . on a contract claim by a contractor or a unit concerning . . . performance [or] modification."). *Second*, Ross, in its Petition for Judicial Review of the Hearing Officer's decision, explained that it was petitioning pursuant to Art. 25 § 1A. Again, if GP-5.15(a) had applied, Ross's appeal to the circuit court would have instead been authorized by both SFP § 15-223(a)(1)-(2) and SG § 10-222. Yet throughout the proceedings leading to this appeal, Ross did not invoke any provision of the State Government or State Finance and Procurement Articles. Even if it had, in light of GP-5.15(b), its attempts would have been unsuccessful.